Simon and Simon v. Commissioner.
Simon & Simon v. Commissioner
Docket No. 110570.
United States Tax Court
1943 Tax Ct. Memo LEXIS 337; 1 T.C.M. (CCH) 982; T.C.M. (RIA) 43197; April 28, 1943
*337 Petitioner failed to establish that the claimed bad debt became worthless in 1939, hence, deduction properly disallowed. Walter B. Saul, Esq., 2301 Packard Bldg., Philadelphia, Pa., and C. W. Randall, Jr., Esq., for the petitioner. Harry L. Brown, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in the petitioner's income taxes for the years 1938 and 1939 in the amounts of $697.92 and $6,072.47, respectively. The error alleged as to 1938 has been abandoned, leaving as the sole remaining issue the question whether the petitioner is entitled to a bad debt deduction for the taxable year 1939 in the amount of $33,386.95. Findings of Fact The following facts are established by the evidence introduced at the hearing: The petitioner, a New Jersey corporation, was organized in 1924 and has its principal offices at 2207 Fidelity-Philadelphia Trust Building, Philadelphia, Pennsylvania. It filed its corporation income and excess-profits tax returns for 1938 and 1939 with the Collector of Internal Revenue for the First District of Pennsylvania at Philadelphia, Pennsylvania. Petitioner, in its 1939 return, claimed the amount *338 of $33,386.95 as a deduction from gross income as a bad debt. On March 1, 1924, the petitioner acquired all of the stock of Main Realty Company, herein sometimes referred to as Main, a Pennsylvania corporation organized in 1915. Main's asset and liability accounts were closed out on its books as of March 1, 1924. As of that date they were set up on petitioner's books with appropriate designation. When Main's books were closed it had a surplus of $20,682.56. When the petitioner acquired Main's stock, the latter corporation's only asset was a parcel of real estate located in Philadelphia with a partially constructed apartment building thereon. The building was completed in the fall of 1924 and since that time has been known as the Cheston Apartments. From March 1, 1924, to and including the year 1939, Main had no separate bank account, kept no books of its own, and paid no officers' salaries. It maintained its offices with the petitioner but paid no rent. Its corporate charter was not surrendered. Its corporate existence was continued for the purpose of holding title to the property because the petitioner, being a New Jersey corporation, could not do so. The petitioner took over the *339 active operation of the Cheston Apartments and received all income and paid all bills relative thereto. The erection of the apartment house was partially financed by a construction mortgage loan for $150,000 and partially by money advanced by the petitioner. The mortgage was put on the property when the building was started. At the time the mortgage was executed the appraised value of the land and building (when completed), for mortgage purposes, totalled $270,000, divided as follows: Land - $60,000; completed building - $210,000. The cost of the building as shown by petitioner's tax return for 1924, the year of completion, was $202,349.55. On May 24, 1929, a second mortgage for $50,000 was placed on the property. The petitioner reported the combined operations of Main and itself in its income tax returns for the years 1924 to 1933, inclusive. In 1934, the Commissioner decided that separate returns should be made by each company. Main filed separate returns for the years 1934 to 1939, inclusive. It reported a loss on each of said returns. The following are the unpaid net cash advances made by the petitioner to Main for the years indicated. The sums represent the difference between *340 the amount of the expenditures for Main's account less total amounts received out of the operation of Cheston Apartments. The 1939 advances were made prior to an appraisal of the property which fixed a value of $85,000. Year
Advances
1924-1934
$64,466.64
1935
6,002.97
1936
6,407.16
1937
5,339.24
1938
11,244.94
1939
2,356.25
$95,397.21
Petitioner has never been repaid any of the advances made to Main Realty Company. Main's operating losses for the years 1924 to 1933, inclusive, are respectively as follows: Year
Amount
1924
$ 6,029.70
1925
4,295.31
1926
6,353.72
1927
6,698.86
1928
7,373.05
1929
5,554.92
1930
6,023.85
1931
13,072.56
1932
9,402.49
1933
13,708.66
The following are Main's operating losses and operating deficits as of December 31 of each year from 1934 to 1939, inclusive: Operating
Operating
Year
Loss
Deficit
1934
$17,102.27
$ 93,964.68
1935
12,521.65
106,486.33
1936
13,000.40
117,835.54
1937
10,915.59
128,824.13
1938
11,786.61
140,419.74
1939
7,860.15
148,029.89
The unrecovered cost of Cheston Apartments reported by petitioner in its tax returns, as of the end of 1937 and 1938, was $166,022.75 and *341 $164,215.59, respectively. The property on each of these dates was subject to two mortgages securing the payment of $185,000. Opinion VAN FOSSAN, Judge: The proof in this case fails entirely to establish that the debt in question became worthless in 1939. Every reasonable inference from the facts is that it was worthless long prior to the taxable year. We hold that petitioner has failed to carry its burden of proof. Decision will be entered for the respondent.